*See Dissenting Opinion*
Filed 8/11/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072688 |
| v. | (Super.Ct.No. FBV2968) |
| DAVID JAMES LIPPERT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Ingrid Adamson Uhler, Judge. Reversed.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, and Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Defendant and Appellant.

Jason Anderson, District Attorney and James R. Secord, Deputy District Attorney, for Plaintiff and Respondent.

# I.

# BACKGROUND

On January 1, 2019, Senate Bill No. 1437 became effective. (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015).) The legislation made several changes to the law of murder, including enacting Penal Code section[1] 1170.95, which provides a procedure by which certain defendants previously convicted of murder could, under certain circumstances, petition to vacate the conviction as inconsistent with the law as modified by Senate Bill No. 1437.

Defendant and appellant, David James Lippert, filed a petition under section 1170.95 to vacate his 2003 murder conviction. The parties stipulated that defendant made a prima facie showing that he "fall[s] within the parameters for resentencing" under section 1170.95. Plaintiff and respondent, the San Bernardino County District Attorney's Office (the People), however, moved to strike the petition on the ground that Senate Bill No. 1437 is unconstitutional because it (1) impermissibly amended Proposition 7 (Ballot Pamp., Prim. Gen. Elec. (Nov. 7, 1978) text of Prop. 7 (Proposition 7)); (2) impermissibly amended Proposition 115 (Ballot Pamp., Prim. Elec. (June 5, 1990) text of Prop. 115 (Proposition 115)); (3) violates separation of powers principles; and (4) violates Victims' Bill of Rights of 2008 (Marsy's Law). The trial court agreed Senate Bill No. 1437 unconstitutionally amended Propositions 7 and 115, and struck defendant's petition without addressing the People's remaining arguments.

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

2

Defendant timely appealed.  Defendant asserts the trial court erred in concluding that Senate Bill No. 1437 is unconstitutional.  The Attorney General's Office filed an amicus brief agreeing with defendant's claims of error.  We agree and reverse.

II.

DISCUSSION

A.  *Background*[2]

1.  *Proposition 7*

"Proposition 7, the so-called Briggs Initiative, enacted by the electorate on November 7, 1978, effected a number of changes in the criminal law."  (*In re Oluwa* (1989) 207 Cal.App.3d 439, 442.)  "The purpose of [Proposition 7] was to substantially increase the punishment for persons convicted of first and second degree murder." (*People v. Cooper* (2002) 27 Cal.4th 38, 42.)

Among other things, Proposition 7 "rewrote" section 190, which outlines the penalties for murder.  (*In re Oluwa*, *supra*, 207 Cal.App.3d at pp. 442-443.)  Specifically, Proposition 7 "increased the punishment for first degree murder from an indeterminate term of life imprisonment to a term of 25 years to life, and for second degree murder from a term of five, six, or seven years to 15 years to life in state prison."  (*People v. Cooper*, *supra*, 27 Cal.4th at pp. 41-42.)  Proposition 7 also "added several special circumstances to section 190.2 . . . , expanded the list of felonies subject to the 'felony-

_____

[2] The factual background underlying defendant's case is not relevant to the issues on appeal.

3

murder' special circumstance, and deleted the requirement that a felony murder be willful, deliberate, and premeditated." (*People v. Weider* (1985) 39 Cal.3d 836, 844; see Prop. 7, § 6.)[3] Under Proposition 7, a special circumstance warranting the death penalty or a life sentence exists if the "murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit" one of nine enumerated felonies. (Prop. 7, § 6.)

Proponents of Proposition 7 argued it would "give every Californian the protection of the nation's toughest, most effective death penalty law." (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) at p. 34.) They claimed Proposition 7 was necessary to replace the "weak and ineffective" death penalty law that had recently been passed by "anti-death penalty politicians" in the Legislature. (*Ibid.*) To that end, Proposition 7 "did not authorize the Legislature to amend its provisions without voter approval." (*People v. Cooper*, *supra*, 27 Cal.4th at p. 44.)

---

[3] We grant the People's August 12, 2019, request for judicial notice. (Evid. Code, §§ 450 et seq.)

## 2. *Proposition 115*

"Proposition 115, the 'Crime Victims Justice Reform Act,' changed criminal law in several respects on June 6, 1990." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 286.) Among other things, Proposition 115 amended section 189, the felony-murder statute, "to add kidnapping, train wrecking, and various sex offenses to the list of felonies supporting a charge of first degree murder." (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 344.) Proposition 115 also added section 190.2, subdivision (c) which states that "[e]very person, not the actual killer who, with the intent to kill, aids . . . or assists any actor in the commission of murder in the first degree shall suffer death or" a life sentence, if one or more of the special circumstances stated in section 190.2, subdivision (a) is found true. (Prop. 115, § 10.) One such circumstance, added by Proposition 7, is if the murder occurred during the commission of certain offenses enumerated in section 190.2, subdivision (a)(17). (§ 190.2, subd. (a)(17).) Those enumerated offenses include mayhem (§ 203) and rape by instrument (§ 289). (Prop. 115, §§ 9, 10.)

Proposition 115 also added section 190.2, subdivision (d), which provides that, "[n]otwithstanding subdivision (c)" of section 190.2, anyone who acts "with reckless indifference to human life," is a "major participant" in certain felonies listed in section 190.2, subdivision (a)(17), and who is therefore found guilty of first degree murder because someone was killed during the commission of the felony (or felonies), "shall suffer death" or a life sentence. (Prop. 115, § 10.)

Proposition 115 provided that it could be amended only by the voters or through a law passed by two-thirds of both chambers of the Legislature. (1990 Ballot Pamp. (June 5, 1990) text of Prop. 115, § 30, 69.)

### 3. *Senate Bill No. 1437*

On September 30, 2018, the Governor signed Senate Bill No. 1437. "The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending . . . sections 188 and 189, as well as by adding . . . section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722-723 (*Martinez*).)

An uncodified section of the law expressing the Legislature's findings and declarations states the law was "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It further provides that the legislation was needed "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are

not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e).)

Prior to Senate Bill No. 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.) "This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed '"for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion." [Citations.]' [Citation.]" (*In re R.G.*, *supra*, at p. 144.) "The purpose of the felony-murder rule [was] to deter those who commit[ted] the enumerated felonies from killing by holding them strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony." (*People v. Cavitt* (2004) 33 Cal.4th 187, 197.) Aider and abettor liability under the doctrine was thus "vicarious in nature." (*People v. Chiu*, *supra*, at p. 164.)

Senate Bill No. 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*In re R.G.*, *supra*, 35 Cal.App.5th at p. 144.) "Senate Bill No. 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is

7

liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749; § 189, subd. (e); Stats. 2018, ch. 1015, § 3; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1099-1100, review granted Nov. 13, 2019, S258175; *Martinez, supra*, 31 Cal.App.5th at p. 723.) "Senate Bill No. 1437 thus ensures that murder liability is not imposed on a person who did not act with implied or express malice," or—when the felony murder doctrine is at issue—"was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Munoz, supra*, at pp. 749-750; Stats. 2018, ch. 1015, § 1, subds. (f), (g); *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147; *Martinez, supra*, at p. 723.)

Senate Bill No. 1437 also added section 1170.95, which permits persons convicted of murder under a felony murder or natural and probable consequences theory to petition in the sentencing court for an order vacating their convictions and allowing defendant to be resentenced. (Stats. 2018, ch. 1015, § 4; *Martinez, supra*, 31 Cal.App.5th at p. 723.) An offender may file a section 1170.95 petition if he or she was prosecuted under a felony murder or natural and probable consequences theory, but under amended sections 188 or 189, could not have been convicted of first or second degree murder. (§ 1170.95, subd. (a).) If the petitioner makes a prima facie showing that he or she is entitled to relief, the trial court must conduct a hearing to determine whether to vacate the murder

8

conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1); *Martinez*, *supra*, at pp. 723-724.) At such a hearing, both the prosecution and the defense may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3); *Martinez*, *supra*, at pp. 723-724.)

If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been [sic] previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) If the petitioner is found eligible for relief, but "murder was charged generically[] and the target offense was not charged," the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes." (§ 1170.95, subd. (e).)

D. *Standard of Review and Applicable Law*

We review the trial court's conclusion that Senate Bill No. 1437 is unconstitutional under the de novo standard of review. (*Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1374.)

Article II, section 10, subdivision (c) of the California Constitution provides that "[w]hen a statute enacted by the initiative process is involved, the Legislature may amend it only if the voters specifically gave the Legislature that power, and then only upon whatever conditions the voters attached to the Legislature's amendatory powers."

9

(*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1483-1483.) "An amendment is '. . . any change of the scope or effect of an existing statute . . . . A statute which adds to or takes away from an existing statute is considered an amendment." (*Franchise Tax Board v. Cory* (1978) 80 Cal.App.3d 772, 822; accord, *People v. Kelly* (2010) 47 Cal.4th 1008, 1027.)

"In determining whether a legislative act has amended an existing statute, we examine and compare the provisions of the legislative act or new law with the existing statute." (*Tesoro Logistic Operations, LLC v. City of Rialto* (2019) 40 Cal.App.5th 798, 807.) "We simply need to ask whether [the statute] prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.) We must interpret the law to ensure that the voters "get what they enacted, not more and not less." (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 909.) The voters' intent is our "paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889.)

We apply "'a strong presumption of constitutionality [to the] Legislature's acts.'" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253, 1256.) Nonetheless, we "have a duty to ""jealously guard"" the people's initiative power, and hence to ""apply a liberal construction to this power wherever it is challenged in order that the right"" to resort to the initiative process ""be not improperly annulled."""" (*People v. Kelly*, *supra*, 47 Cal.4th at p. 1025.)

E.  *Analysis*

Because the parties stipulated that defendant made a prima facie showing that he is entitled to file a section 1170.95 petition, the only issue we must decide is whether Senate Bill No. 1437 is constitutional.  For the reasons stated below, we conclude that it is.

The People argue Senate Bill No. 1437 is unconstitutional because it (1) unlawfully amended Propositions 7 and 115; (2) violates separation of powers principles; and (3) violates Marsy's Law.  Our colleagues in Division One of this district recently addressed—and rejected—these arguments, and held that Senate Bill No. 1437 is constitutional.  (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270 (*Gooden*); *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*).)  We note that the issues, arguments, and authorities raised in *Gooden* and *Lamoureux* are virtually identical to those presented here.  We agree fully with *Gooden* and *Lamoureux* and adopt their analysis here.  We briefly outline their core holdings, which apply fully here.

*Gooden* found Senate Bill No. 1437 does not unconstitutionally amend Proposition 7, which increased the punishment for first and second degree murder and expanded special circumstance murder.  (*Gooden*, *supra*, 42 Cal.App.5th at pp. 280-286.)  *Gooden* noted Senate Bill No. 1437 does not speak to the penalties for murder; rather, it amends the mental state required for murder.  (*Gooden*, *supra*, at p. 287.)  The court explained:  Senate Bill No. 1437 did not amend Proposition 7 because it did not "address the same subject matter [as Proposition 7].  It did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree

11

murder or 15 years to life for second degree murder. Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder. In short, it did not address punishment at all. Instead, it amended the mental state requirements for murder, which 'is perhaps as close as one might hope to come to a core criminal offense "element."'" (*Gooden*, *supra*, at p. 282, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466, 493.)

Because Senate Bill No. 1437 and Proposition 7 concerned different subjects, the *Gooden* court concluded Proposition 7 did not foreclose the Legislature from enacting Senate Bill No. 1437 to amend the mental state requirements for murder under the felony-murder rule and the natural and probable consequences doctrine. (*Gooden*, *supra*, 42 Cal.App.5th at pp. 282-286.) *Gooden*'s analysis applied to all the legislative amendments effectuated by Senate Bill No. 1437, including section 1170.95. (*Gooden*, *supra*, at p. 286.)

*Gooden*, *supra*, 42 Cal.App.5th at page 288, similarly found Senate Bill No. 1437 does not amend Proposition 115, which made more offenses eligible for felony murder. The *Gooden* court explained, again, Senate Bill No. 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based" but instead "amended the mental state necessary for a person to be liable for murder." (*Gooden*, *supra*, at p. 287.) The court thus concluded that because Senate Bill No. 1437 does not amend Propositions 7 and 115, and it does not violate article II, section 10, subdivision (c) of the

12

California Constitution, which provides that the Legislature may amend or repeal an initiative statute only with voter approval, unless the original initiative permits amendment or repeal without voter approval. (*Gooden*, *supra*, at pp. 279, 289.)

Additionally, the court in *Lamoureux*, *supra*, 42 Cal.App.5th at page 246 found Senate Bill No. 1437 does not violate state separation of powers principles.[4] The court explained, first, the bill was part of a broad penal reform to ensure our state's murder laws fairly address individual culpability and to reduce prison overcrowding. (*Lamoureux*, *supra*, at pp. 247, 256.) Having such a purpose, any interference with the executive's power of clemency is merely incidental and not an impermissible encroachment on the core functions of the executive. (*Id*. at p. 256.) Second, the bill does not intrude on a core function of the judiciary by allowing prisoners serving final sentences to seek relief. To the extent retroactive reopening of final judgments implicates individual liberty interests, Senate Bill No. 1437 does not present any risk to those interests. (*Lamoureux*, *supra*, at p. 261.) "On the contrary, it provides potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution," the criminal defendant. (*Ibid*.) Also, the legal landscape is rife with legislation allowing petitioners to reopen final judgments of conviction without regard to their finality as of the effective date of the legislation, for example, Propositions 36 and 47. (*Lamoureux*, *supra*, at pp. 262-263.)

---

[4] Although the trial court did not address the People's arguments that Senate Bill No. 1437 violates separation of powers principles and Marsy's Law, we address them because the People have reasserted them on appeal.

13

Finally, the court in *Lamoureux*, *supra*, 42 Cal.App.5th at pages 264 to 266, found that section 1170.95 does not violate crime victims' rights as enshrined in Marsy's Law. Although Marsy's Law established a victim's right to prompt and final conclusion to postjudment proceedings, Marsy's Law did not foreclose postjudment proceedings altogether. (*Lamoureux*, *supra*, at p. 265.) Furthermore, section 1170.95 does not deprive victims of safety-related rights because trial courts may consider that factor when resentencing the defendant on any remaining counts. (*Lamoureux*, *supra*, at pp. 265-266.)

For the reasons thoroughly explained in *Gooden* and *Lamoureux*, which we adopt and apply here, we reject the People's arguments and conclude that Senate Bill No. 1437 is constitutional. In doing so, we follow this court's recent opinion in *People v. Johns* (2020) 50 Cal.App.5th 46, and join several other courts which have held that Senate Bill No. 1437 is constitutional. (E.g., *People v. Lopez* (June 29, 2020, B300787) __ Cal.App.5th __, 2020 WL 3496823; *People v. Solis* (2020) 46 Cal.App.5th 762, 769; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Prado* (2020) 49 Cal.App.5th 480.)

The trial court therefore erred in striking defendant's section 1170.95 petition on the ground that Senate Bill No. 1437 is unconstitutional. Accordingly, we reverse the trial court's order striking defendant's petition and remand for the trial court to hold a hearing on the petition.

14

IV.

DISPOSITION

The trial court's order granting the People's motion to strike the section 1170.95 resentencing petition is reversed. The matter is remanded for further proceedings under section 1170.95.

CERTIFIED FOR PUBLICATION


<u>CODRINGTON</u>
J.


I concur:


<u>FIELDS</u>
J.

[*The People v. David James Lippert*, E072699]

RAMIREZ, P.J.

I respectfully dissent.  I believe Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) — in particular, Penal Code section 1170.95 — is unconstitutional because (1) it amends Proposition 7, and (2) it violates the separation of powers.

I

UNCONSTITUTIONAL AMENDMENT OF A PROPOSITION

A.      *The Constitutional Rule*.

Under article II, section 10, subdivision (c) of the California Constitution (section 10(c)), the Legislature cannot unilaterally amend an initiative.  Either the initiative must permit amendment, or the voters must approve the amendment.

"'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the [a]ct.  Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the [a]ct.  [Citations.]' [Citation.]" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252.)  At the same time, "we must bear in mind the declared 'duty of the courts to jealously guard' the people's right of initiative and referendum.  [Citations.]  '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled.'  [Citations.]" (*American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 708.)

1

Under this liberal construction, section 10(c) is not limited to *express* amendments to the *text* of an initiative. Rather, "'[f]or purposes of article II, section 10, subdivision (c), an amendment includes a legislative act that changes an existing initiative statute by taking away from it.' [Citation.]" (*People v. DeLeon* (2017) 3 Cal.5th 640, 651.) By contrast, "the Legislature remains free to enact laws addressing the general subject matter of an initiative, or a 'related but distinct area' of law that an initiative measure 'does not specifically authorize or prohibit.' [Citations.]" (*People v. Kelly* (2010) 47 Cal.4th 1008, 1026, fn. 19.)

For example, in *People v. Armogeda* (2015) 233 Cal.App.4th 428, Proposition 36 generally provided that parole could be not be revoked based on either the commission of a nonviolent drug possession crime or a violation of a drug-related parole condition (which the court abbreviated NVDP). (*Id*. at pp. 431, 433-434.) Proposition 36 could be amended only by a two-thirds vote of each house, and then only if the amendment was consistent with its purposes. (*Id*. at p. 434.) Thereafter, the Legislature enacted the Postrelease Community Supervision Act of 2011, which required that certain felons released from prison be placed on postrelease community supervision, as opposed to parole. It also provided that postrelease community supervision could be revoked, and the releasee could be incarcerated, with no exception for an NVDP. (*Id*. at pp. 431, 434-435.)

The appellate court held that this was an amendment of Proposition 36. (*People v. Armogeda*, *supra*, 233 Cal.App.4th at p. 435.) It explained: "The Attorney General

argues the Act does not amend Proposition 36, reasoning that parole is separate and distinct from postrelease community supervision, and that Proposition 36 does not apply to such supervision.  Postrelease community supervision, however, did not exist when Proposition 36 was enacted; it was created when the Legislature passed the Act.  The Legislature cannot evade Proposition 36's amendment requirements simply by passing legislation that purports to pare down the proposition's coverage.  Proposition 36 clearly dealt with the manner in which NVDP offenders should be treated while under continued government supervision after release from prison.  At the time of Proposition 36's passage, the continued supervision was called parole.  Now, the continued supervision is called either parole or postrelease community supervision.  In either case, the goal is to provide oversight and guidance as the inmate reintegrates into a free society.  The Legislature may not change Proposition 36's coverage by changing the name and the means of the oversight without complying with the amendment requirements of the initiative." (*Ibid*.)

We review rulings regarding the effect of section 10(c) de novo.  (*People v. Armogeda*, *supra*, 233 Cal.App.4th at p. 435.)

B.      *The Enactment and Effect of SB 1437*.

SB 1437 was enacted in 2018, effective January 1, 2019.  (Stats. 2018, ch. 1015, pp. 6673-6676.)

Previously, under the natural and probable consequences doctrine, an aider and abettor could "' . . . be held criminally responsible . . . not only for the crime he or she

3

intended to aid and abet (the target crime), but also for any other crime [nontarget crime] that is the "natural and probable consequence" of the target crime.' [Citation.] To find an aider and abettor guilty of a nontarget crime under the natural and probable consequences theory, the jury must find that the defendant aided and abetted the target crime, that a coparticipant in the target crime also committed a nontarget crime, and that this nontarget crime was a natural and probable consequence of the target crime the defendant aided and abetted. [Citation.]" (*People v. Hardy* (2018) 5 Cal.5th 56, 92.)

The natural and probable consequences doctrine did not apply to first degree murder (*People v. Chiu* (2014) 59 Cal.4th 155, 166-167); an aider and abettor could not be guilty of first degree murder unless he or she personally deliberated, premeditated, and intended to kill. (*Id.* at p. 166.) However, it did apply to second degree murder. (*Id.* at pp. 165-166.)

SB 1437 eliminated the natural and probable consequences rule as applied to murder. It also restricted the scope of the felony murder rule.

Specifically, it amended section 188,[1] concerning malice, so as to provide that, except as permitted by the felony murder rule, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

It also amended section 189, concerning the degrees of murder, so as to provide that the felony murder rule (§ 188, subd. (a)) applies to a person only if:

---

[1] This and all further statutory citations are to the Penal Code.

4

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . .

"[(4) T]he victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§ 189, subds. (e), (f).)

SB 1437 also enacted section 1170.95, which allows a person who was convicted of first or second degree murder under a natural and probable consequences or felony murder theory, but who could not be so convicted under SB 1437, to petition to have the conviction vacated. If the target offense was not charged, the conviction is reduced to the target offense, and the petitioner is resentenced. (§ 1170.95, subd. (e).) The petitioner also must be resentenced on any remaining counts. (§ 1170.95, subd. (a).)

C.      *The Effect of SB 1437 on Proposition 7.*

Proposition 7, a/k/a the Briggs Initiative, was enacted in 1978. It changed the law regarding murder in several respects. As relevant here, it amended section 190 to increase the penalties for first and second degree murder. Specifically, for first degree murder, it eliminated life with the possibility of parole as a potential penalty, leaving only

5

the death penalty or life without the possibility of parole; and for second degree murder, it increased the penalty from 5, 6, or 7 years to 15 years to life. (Compare § 190, subd. (a), with former § 190, subd. (a), Stats. 1977, ch. 316, § 5, p. 1256.)

Proposition 7 did not allow any amendments by the Legislature. (See Prop. 7, 1978 Ballot Pamp. at pp. 33, 41-46; see also *People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1658.)

SB 1437 did not change the text of Proposition 7. Nevertheless, it changed the definition of murder so that a person like petitioner here — who has already been convicted of murder and sentenced in accordance with Proposition 7 — is no longer a "murderer" and can have his or her sentence reduced. As in *Armogeda*, the amendment simply relabeled a category that already existed in an effort to take it outside the scope of an initiative. This "takes away" from the initiative. Thus, in effect, SB 1437 amended Proposition 7.

*People v. Jenkins* (1995) 10 Cal.4th 234 supports my conclusion. There, the Supreme Court held that the habitual offender statute (§ 667.7), which prescribes longer terms of imprisonment for certain recidivists, including recidivist murderers, "does not otherwise circumvent the intent of the electorate in adopting the Briggs Initiative." (*Id.* at p. 246, fn. 7.) "Section 190 simply provides that every person convicted of murder 'shall suffer confinement in the state prison' for specified periods. The only reasonable construction of this language is that the term prescribed by section 190 establishes a 'floor,' i.e., a minimum term of imprisonment that a person convicted of murder is

6

required to serve, and not that a murderer must be sentenced under this statute to the exclusion of any other sentencing scheme.  Section 190 refers to persons convicted of murder, but neither this statute nor any other provision of the initiative indicates that the electorate intended to preclude a murderer from receiving a total sentence that is greater than the term provided under section 190 where other factors, in addition to the fact of the conviction of murder, are present that increase the defendant's culpability or otherwise warrant greater punishment." (*Ibid*.)  Unlike the habitual offender statute, SB 1437 does lower the punishment of convicted murderers below the intended floor.  Thus, *Jenkins* strongly implies that this is a prohibited amendment.

I acknowledge that I am swimming against the tide.  So far, every published case on the issue has held that SB 1437 does not unconstitutionally amend Proposition 7. (*People v. Superior Court* (*Ferraro*) (2020) ___ Cal.App.5th ___, ___-___ [2020 Cal. App. LEXIS 626 at pp. *16-*26] [Third Dist.]; *People v. Lopez* (2020) ___ Cal.App.5th ___, ___-___ [2020 Cal. App. LEXIS 595 at pp. *13-*15] [Second Dist., Div. Two]; *People v. Johns* (2020) 50 Cal.App.5th 46, 55-56 [Fourth Dist., Div. Two]; *People v. Smith* (2020) 49 Cal.App.5th 85, 91-92 [Second Dist., Div. Five], pet. for rev. filed Jun. 18, 2020; *People v. Bucio* (2020) 48 Cal.App.5th 300, 308-311 [Second Dist., Div. Six]; *People v. Cruz* (2020) 46 Cal.App.5th 740, 754-759 [Fourth Dist., Div. Three];[2] *People*

---

[2]     Accord, *People v. Prado* (2020) 49 Cal.App.5th 480, 491-492  [Fourth Dist., Div. Three]; *People v. Solis* (2020) 46 Cal.App.5th 762, 775-779 [Fourth Dist., Div. Three].

7

*v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 280-286 [Fourth Dist., Div. One];[3] but see *id.* at p. 289 [dis. opn. of O'Rourke, J.].)  The Attorney General has taken the same position.  Accordingly, in this appeal, he is not representing the People; to the contrary, he has filed an amicus brief supporting petitioner's position.

In broad brush, these cases reason that Proposition 7 dealt with the *penalties* for murder, whereas SB 1437 deals with the *definition* of murder.  (E.g., *People v. Superior Court* (*Gooden*), *supra,* 42 Cal.App.5th at pp. 281-282.)  In their view, this distinction brings this issue within the rule that the Legislature remains free to enact laws addressing "'"a '"related but distinct area"'" [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit.'"'"  (*Id.* at pp. 280, 282.)

These cases also find no indication in Proposition 7 that the voters "inten[ded] to freeze the substantive elements of murder in place as they existed in 1978."  (*People v. Superior Court* (*Gooden*), *supra,* 42 Cal.App.5th at p. 286.)  They rely on the principle of statutory interpretation that "'[w]here [a] reference [to other statutes] is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' [Citation.]" (*Id.* at p. 283; see generally *People v. Cooper* (2002) 27 Cal.4th 38, 44; *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59.)

---

**3**     Accord, *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251 [Fourth Dist., Div. One].

8

Under the circumstances of this case, however, I need not decide whether SB 1437 can apply prospectively, to persons convicted of second degree murder after it went into effect. I am concerned with the fact that, under section 1170.95, SB 1437 applies retrospectively, to persons convicted of second degree murder and sentenced under Proposition 7 before SB 1437 went into effect. As to such persons, SB 1437 authorizes a penalty that Proposition 7 specifically prohibits. It could hardly be clearer — the same person gets a different sentence (or none). And as *Armogeda* teaches us, the Legislature cannot accomplish this by the sleight-of-hand of renaming certain types of murder.

Only a handful of the cases cited above addressed this particular argument, and then only dismissively. *Gooden* stated:

"Finally, the People contend that irrespective of whether the Legislature may make prospective changes to the offense of murder, it may not retroactively 'allow[] someone who was convicted of murder, lawfully and as a matter of historical fact, to secure a sentence less than that mandated in section 190 when they were convicted by eliminating their sentence altogether.' Therefore, they argue the resentencing procedure established by section 1170.95 violates Proposition 7, even if the remainder of Senate Bill 1437 does not.

" . . . [This] assumes a petitioner's murder conviction is fixed and the resentencing procedure merely provides an avenue by which a petitioner may obtain a more lenient sentence for the extant conviction. However, that is not the case. The effect of a successful petition under section 1170.95 ""'is to vacate the judgment . . . as if no

9

judgment had ever been rendered.'"'" [Citations.] Thus, the resentencing procedure established by section 1170.95 — like the remainder of the statutory changes implemented by Senate Bill 1437 — does not amend Proposition 7." (*People v. Superior Court* (*Gooden*)*, supra,* 42 Cal.App.5th at pp. 286.)

In my view, this argument reduces to bootstrapping. Until SB 1437 came along, a petitioner's murder conviction *was* fixed, as was his or her sentence. *Gooden* assumes what needs to be proved — that despite Proposition 7, SB 1437 can constitutionally "unfix" the conviction, even though that means it also unfixes the sentence. This exalts form over substance.

The voters of California have spoken. In Proposition 7, they decreed that "every person guilty of murder in the second degree *shall be punished* by imprisonment in the state prison for a term of 15 years to life." According to *Gooden*, the Legislature can carve out *some* aiders and abettors, even though they have been convicted of second degree murder and sentenced under Proposition 7, declare them retroactively not guilty of second degree murder, and thus prevent them from serving 15 years to life. If so, however, then the Legislature could declare *all* persons convicted of second degree murder since 1978 not guilty — or guilty of some new crime with a lesser penalty — and thus abrogate this aspect of Proposition 7 entirely. "[I]t would accomplish indirectly what the Legislature is constitutionally prohibited from accomplishing directly." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1098.)

10

I would conclude that, because section 1170.95 applies SB 1437 retrospectively to persons convicted of second degree murder and sentenced before it went into effect, SB 1437 is to that extent an unconstitutional amendment to Proposition 7.

II

SEPARATION OF POWERS

The California Constitution, like the federal constitution, requires the separation of powers. (Cal. Const., art. III, § 3.)

In *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211, the United States Supreme Court held that federal separation of powers principles bar Congress from retroactively setting aside a final judgment.

There, the plaintiffs filed an action in 1987 for securities fraud allegedly committed in 1983 and 1984. (*Plaut v. Spendthrift Farm, supra*, 514 U.S. at p. 213.) On June 20, 1991, the Supreme Court held in one case (*Lampf*) that the limitations period for such an action was not more than three years, and in a second case (*Beam*) that this newly announced limitation period applied in pending cases. (*Plaut, supra,* at pp. 213-214.) Based on these two rulings, the trial court dismissed the case. (*Id.* at p. 214.)

Congress then enacted a statute that permitted security fraud actions that were filed before *Lampf* and *Beam* were decided, and that were timely under the law as it stood when they were filed, to be reinstated. (*Plaut v. Spendthrift Farm, Inc.*, *supra*, 514 U.S. at pp. 214-215.) When the plaintiffs filed a motion for reinstatement, the trial court held

11

that they were entitled to reinstatement under the terms of the statute, but the statute was unconstitutional. (*Id*. at p. 215.)

The Supreme Court agreed that the statute was unconstitutional because it violated the separation of powers. (*Plaut v. Spendthrift Farm, Inc.*, *supra*, 514 U.S. at pp. 217-240.) It reviewed the common understanding of the separation of powers clause, both before and after its adoption. (*Id*. at pp. 217-225.) That understanding was that (in Alexander Hamilton's words): "'A legislature without exceeding its province cannot reverse a determination once made, in a particular case; though it may prescribe a new rule for future cases.' [Citation.]" (*Id*. at p. 222.) The court concluded that "[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated this fundamental principle." (*Id*. at p. 219; see also *id*. at p. 225.)

The court conceded "that Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly. [Citations.]" (*Plaut v. Spendthrift Farm, Inc.*, *supra*, 514 U.S. at p. 226.) "Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." (*Id*. at p. 227.)

In ringing terms, *Plaut* concluded: "We know of no previous instance in which Congress has enacted retroactive legislation requiring an Article III court to set aside a final judgment, and for good reason. The Constitution's separation of legislative and judicial powers denies it the authority to do so. [The challenged statute] is unconstitutional to the extent that it requires federal courts to reopen final judgments entered before its enactment." (*Plaut v. Spendthrift Farm, Inc.*, *supra*, 514 U.S. at p. 240; see also *Salazar v. Buono* (2010) 559 U.S. 700, 717 [*Plaut* stands for the proposition that "Congress . . . may not use its legislative powers to reopen final judgments."].)

Our Supreme Court has stated, albeit in dictum, "[T]he Legislature may not undertake to readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment. [Citations.]" (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) And even before *Plaut*, it had held that "the Legislature lacks constitutional authority to readjudicate or set aside final court judgments *on a case-by-case basis*." (*Mandel v. Myers* (1981) 29 Cal.3d 531, 547, italics added; see also *id*. at pp. 547-552.)

In two companion cases decided in 2002, it dealt with whether the Legislature can set aside *an entire class* of final court judgments. In both cases, it held that *Plaut*'s analysis of federal separation of powers principles applies equally to the state constitutional separation of powers clause. (*People v. Bunn* (2002) 27 Cal.4th 1, 22-23 ["We find *Plaut* persuasive for purposes of interpreting California's separation of powers clause."]; *People v. King* (2002) 27 Cal.4th 29, 35 ["*Plaut* . . . is consistent with

13

California law, and is persuasive in determining when the state separation of powers clause prohibits statutory changes in the law of judgment finality."].)

Both cases concerned 1996 and 1997 amendments to section 803 that allowed the People to refile charges of certain sex crimes against minors, even if identical charges had previously been dismissed based on the statute of limitations. (*People v. Bunn*, *supra*, 27 Cal.4th at pp. 5, 9-12; *People v. King*, *supra*, 27 Cal.4th at pp. 31-33.)

The court stated: "We . . . hold that a refiling provision . . . cannot be retroactively applied to subvert judgments that became final before the provision took effect, and before the law of finality changed." (*People v. Bunn*, *supra*, 27 Cal.4th at p. 24; accord, *People v. King*, *supra*, 27 Cal.4th at pp. 34-36.) It added that a law "amending a statute and applying the change to both pending and future cases . . . cannot 'readjudicat[e]' or otherwise 'disregard' judgments that are already 'final.' [Citations.]" (*People v. Bunn*, *supra*, 27 Cal.4th at p. 17.)

Accordingly, "[t]o the extent neither the 1996 nor the 1997 refiling provision was in effect when a prior judgment of dismissal under . . . became final within the meaning of *Plaut*, . . . the state separation of powers doctrine bars reliance on either provision to recharge a molestation defendant with the same crimes. Such a scenario is indistinguishable from the circumstances that gave rise to a separation of powers violation in *Plaut* itself." (*People v. Bunn*, *supra*, 27 Cal.4th at p. 26.)

In *Bunn*, the charges against the particular defendant were dismissed in 1995; however, the People filed an unsuccessful appeal, so the dismissal did not become final

14

until May 1997. (*People v. Bunn*, *supra*, 27 Cal.4th at p. 7.) Meanwhile, on January 1, 1997, the 1996 amendment came into effect (*id*. at p. 9; by its terms, it permitted refiling under that particular defendant's circumstances. (*Id*. at pp. 26-27.) The Supreme Court concluded that the amendments did not violate the separation of powers. (*Ibid*.)

In *King*, similarly, the charges against the defendant were dismissed in 1995; they became final in April 1997. (*People v. King*, *supra*, 27 Cal.4th at pp. 32, 36.) In his case, however, the 1996 amendment did not permit refiling; the 1997 amendment, which did permit refiling, did not go into effect until June 30, 1997, after the dismissal was final. (*Id*. at p. 33.) The Supreme Court therefore concluded that, in his case, the 1997 amendment *did* violate the separation of powers. (*Id*. at p. 36)

Applying *Plaut*, *Bunn*, and *King* here, section 1170.95 violates the separation of powers. The judgment against petitioner has been final since 2005, when the California Supreme Court denied his petition for review. The Legislature cannot constitutionally provide for vacating that final judgment.

I recognize that *People v. Lamoureux*, *supra*, 42 Cal.App.5th 241 held that section 1170.95 does not violate the separation of powers. It read *Bunn* and *King* as inapplicable to a final judgment of conviction in a criminal case. It acknowledged that the separation of powers barred the Legislature from reopening not only final judgments of acquittal, but also final judgments "in favor of private parties against the government" and "final judgments between private parties." (*Lamoureux*, *supra*, at p. 261.) It reasoned,

15

however, that the results in all these cases followed from "the individual liberty underpinnings of the separation of powers doctrine . . . ." (*Ibid.*)

The court continued: "The case at hand stands on different footing. Unlike legislation authorizing the refiling of criminal charges against a previously-acquitted defendant, or the refiling of actions between private parties, section 1170.95 does not present any risk to individual liberty interests. On the contrary, it provides potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution — the criminal defendant himself or herself. In such cases, we do not believe the separation of powers analysis conducted in *Bunn* and *King* controls. Indeed, the parties have directed us to no decisions applying the *Bunn* and *King* separation of powers analysis to bar legislation allowing the reopening of already-final judgments of *conviction* (as distinct from already-final judgments of *dismissal*), and we have found none." (*People v. Lamoureux*, *supra*, 42 Cal.App.5th at p. 261.)

To put it another way, *Lamoureux* created an exception to *Plaut*, *Bunn*, and *King* that operates solely in favor of criminal defendants. In my view, that exception is made up out of whole cloth. *Lamoureux* relied on the fact that the parties had cited no cases holding that separation of powers barred legislation allowing the reopening of already-final judgments of conviction.[4] Equally, however, I have found no cases — other than *Lamoureux* itself, and its progeny — holding that it does *not* bar such legislation.

---

[4] Actually, there is such a case, *State v. Bodyke* (2010) 126 Ohio St.3d 266, [933 N.E.2d 753]. There, the Ohio Supreme Court held that a statute allowing the

The separation of powers is an individual liberty right in two senses. First, the principle was adopted "as a bulwark against tyranny." (*United States v. Brown* (1965) 381 U.S. 437, 443.) "'The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty.' [Citation.]" (*Seila Law LLC v. Consumer Financial Protection Bureau* (2020) ___ S.Ct. ___, ___ [207 L.Ed.2d 494, 517].)

However, this does not mean the principle may be ignored when a branch of government abuses its power in *favor* of an individual. "Liberty is *always* at stake when one or more of the branches seek to transgress the separation of powers[.]" (*Clinton v. City of New York* (1998) 524 U.S. 417, 450 [conc. opn. of Kennedy, J.], italics added.) "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, . . . may justly be pronounced the very definition of tyranny." (Madison, Federalist No. 47 (1788); <https://guides.loc.gov/federalist-papers/text-41-50>.) A tyranny that abuses its power in order to give individual defendants greater liberty is still a tyranny.

*Lamoureux* ignores the fact that the petitioner is not the only one with an interest in the outcome of a section 1170.95 petition. The People, with an upper-case P, and the people, with a lower-case p, both have an interest in criminal convictions and sentences. So do victims and victims' families. These may not be "liberty" interests, but they are

---

attorney-general to reclassify sex offenders who had been judicially classified at sentencing violated separation of powers. (*Id.* at pp. 275-280.)

17

nevertheless entitled to protection against tyranny. When the Legislature puts its thumb on the scale in favor of a prisoner, after a final judicial judgment, it short-weights these groups. And, as I will discuss shortly, the judiciary itself has an institutional interest that is protected by the separation of powers.

Separation of powers is also an individual liberty right in the sense that an individual can have standing to assert it as the basis for invalidating some governmental action. (*Bond v. United States* (2011) 564 U.S. 211, 223 and cases cited.) "If the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object." (*Ibid*.) To my knowledge, however, it has never been held that we *must allow* that constitutional structure to be compromised, if doing so will result in greater liberty for certain favored individuals.

That is because the right is not *only* that of the individual. In *Freytag v. C.I.R.* (1991) 501 U.S. 868, the issue was whether Congress violated the separation of powers by authorizing the Chief Judge of the United States Tax Court, rather than the President, to appoint special trial judges. (*Id*. at pp. 870, 877.) The petitioners were individuals whom the Tax Court had held liable for additional taxes arising out of a tax shelter scheme. (*Id*. at pp. 871-872.) They had consented to have their case heard by an appointed special trial judge. (*Id*. at pp. 871, 878.) The Supreme Court rejected the argument "that petitioners have waived their . . . challenge . . . by consenting to the assignment." (*Id*. at p. 878) It explained, in part, "Our separation-of-powers

18

jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch. [Citation.]" (*Ibid.*) "[T]he disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome . . . 'the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers.' [Citation.]" (*Id.* at p. 879.) In other words, while an individual may have standing to enforce the separation of powers, the issue transcends the interest of any one individual.

In this case, the interest of the judicial branch itself is at stake. The United States Supreme Court exercises "vigilance . . . that no provision of law 'impermissibly threatens the institutional integrity of the Judicial Branch.' [Citation.]" (*Mistretta v. United States* (1989) 488 U.S. 361, 383.) We should be no less vigilant when the Legislature retroactively shortens sentences than if it retroactively lengthened them.

It has been argued that, if SB 1437 is unconstitutional on this ground, then so is other retroactively ameliorative legislation, such as Proposition 36 and Proposition 47. The constitutionality of these statutes is not before us. I will say only that, if the Legislature has exceeded its powers in this case, the fact that it may also have exceeded them in other cases is no reason for us not to follow *Plaut*, *Bunn*, and *King*.

I would conclude that, because section 1170.95 legislatively readjudicates and sets aside final judicial judgments, SB 1437 is to that extent unconstitutional as a violation of the separation of powers.

RAMIREZ     

P. J.
